# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8834 | **DATE** | 2/24/2003 |
| **CASE TITLE** |  | Manning vs. Chambers | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. The judgment of the Bankruptcy Court is affirmed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | FEB 2 5 2003 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. Mailed by MD. | U.S. DISTRICT COURT | docketing deputy initials | 10 |
| | Copy to judge/magistrate judge. | | 2/24/2003 date mailed notice | |
| MD | courtroom deputy's initials | 03 FEB 24 PM 4:31 Date/time received in central Clerk's Office | MD6 mailing deputy initials | |



UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SYLVIA MANNING, not individually, but in )
her capacity as Chancellor of the University of )
Illinois at Chicago, )
)
Appellant, )
)
vs. ) No. 02 C 8834
) Judge Joan H. Lefkow
SANDRA ANN CHAMBERS, )
)
Appellee. )

## MEMORANDUM OPINION AND ORDER

This is an appeal from a final decision of the bankruptcy court discharging the debt of debtor/appellee, Sandra Ann Chambers ("Chambers"), to the claim of creditor-appellant Sylvia Manning ("Manning"), in her official capacity as Chancellor of the University of Illinois at Chicago ("UIC"). (Bankruptcy Case No. 99 B 33040). The bankruptcy court's jurisdiction was founded in 28 U.S.C. §§ 1334 and 157(b)(2)(B), and this court's jurisdiction over the appeal rests on 28 U.S.C. § 158(a)(1). The matter was before the Honorable Carol A. Doyle, Bankruptcy Judge, who issued a memorandum opinion on October 1, 2002. On appeal, this court is to review the bankruptcy court's ruling on summary judgment under a *de novo* standard. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 742 (7th Cir. 1999). For the reasons set forth below, the judgment of the bankruptcy court is affirmed.

### BACKGROUND

During various periods from 1993 to May, 1999, Chambers was registered, enrolled, and attended classes in pursuit of a Master's Degree at UIC, an institution of higher learning. In her

last semester at UIC, Chambers incurred tuition and other charges of $1,118.77 plus accruing interest, which amounts remain unpaid to date.

On October 25, 1999, Chambers filed a voluntary Chapter 7 bankruptcy petition. In her schedules, UIC was listed as the holder of a nonpriority, unsecured claim. On November 23, 1999, the Chapter 7 trustee designated Chambers' bankruptcy a "no asset" case. On January 30, 2000, the bankruptcy court granted Chambers a discharge pursuant to 11 U.S.C. § 727. UIC then notified Chambers that it still considered the entry of discharge to be improper and considered the account balance to be due and owing and refused to release copies of Chambers' transcripts.

On April 12, 2001, Chambers filed an adversary complaint against UIC seeking a hardship discharge pursuant to 11 U.S.C. § 523(a)(8). This complaint was dismissed based on Eleventh Amendment sovereign immunity grounds. Chambers then filed a Second Amended Complaint against Manning, in her official capacity, in which she abandoned her hardship claim and sought only a declaratory judgment that the tuition and related expenses she owes to UIC do not constitute an education loan and are dischargeable under § 523(a)(8). Chambers also sought to force UIC to release her transcripts.

Manning moved to dismiss Chambers' Second Amended Complaint on grounds that "on account" student debts for tuition constitute an educational loan under § 523(a)(8) and cannot be discharged absent a finding of hardship. On June 6, 2002, the Bankruptcy Court converted Manning's motion to dismiss to a motion for summary judgment. On July 18, 2002, Chambers filed a cross motion for summary judgment.

On October 2, 2002, the bankruptcy court granted Chambers' motion for summary judgment and discharged the debt owed to UIC. The court concluded that the tuition and student expenses incurred by Chambers did not qualify as an educational loan under § 523(a)(8).

## DISCUSSION

The issue for the court to decide on this appeal is whether the failure of Chambers to pay her tuition constitutes a "loan" under 11 U.S.C. § 523(a)(8). Under § 523(a)(8), certain forms of educational debt cannot be discharged from bankruptcy. The statute provides in relevant part that

> (a) a discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
> * * *
> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend . . . .

11 U.S.C. § 523(a)(8).

If the tuition and student expenses Chambers left unpaid do constitute a loan under § 523(a)(8), then her debt may not be discharged from bankruptcy. If the tuition and student expenses are not loans, they may be discharged and summary judgment was properly granted in Chambers' favor. The burden of proof lies on Manning to prove by a preponderance of the evidence that her claim is not dischargeable. *Grogan* v. *Garner*, 498 U.S. 279, 287, 291 (1991). Moreover, exceptions to discharge are to be narrowly construed in favor of the debtor. *Id.*; *In re Platter*, 140 F.3d 676, 680 (7th Cir. 1998).

The bankruptcy court concluded that the tuition and student expenses were not loans, thereby making the debt dischargeable and awarding summary judgment in favor of Chambers.

3

The bankruptcy court was persuaded that a broad reading of the term loan to include an extension of credit by UIC would cause "almost any extension of credit for a specific amount of money [to] be considered a loan for purposes of § 523(a)(8)." *In re Chambers*, 283 B.R. 913, 915-16 (Bankr. N.D. Ill. 2002). Moreover, the bankruptcy court relied heavily on the Second Circuit's opinion in *In re Renshaw*, 222 F.3d 82, 90-91 (2d Cir. 2000). The bankruptcy concluded that the definition of loan used in *Renshaw* required at least "some agreement to repay before the transfer is made." *Chambers*, 283 B.R. at 916. The court was also persuaded that if Congress would have intended the term "loan" to have such a broad effect, it would have used the phrase "extension of credit" as that phrase is in other portions of the Bankruptcy Code dealing with whether a debt may be discharged. *See* 11 U.S.C. § 523(a)(2). Finally, the bankruptcy court looked to the intent of the parties, concluding that no evidence was present in the record to illustrate the intent of either of the parties to enter into any sort of arrangement constituting a loan. *Chambers*, 283 B.R. at 916.

The threshold issue for the court to determine is the definition of a "loan" under § 523(a)(8), a term not defined in the Bankruptcy Code or its rules. Courts defining the term "loan" in this context have looked to the use of the term under the common law. *Renshaw*, 222 F.3d at 88. Under such a definition, a loan requires "(i) a contract, whereby (ii) one party transfers a defined quantity of money, goods, or services, to another, and (iii) the other party agrees to pay for the sum or items transferred at a later date." *Id.*; *In re Mehta*, 310 F.3d 308, 313 (3d Cir. 2002). Implicit in this definition is that "the contract to transfer items in return for payment later must be reached prior to or contemporaneous with the transfer." *Renshaw*,

4

222 F.3d at 88. This is the definition applied by the bankruptcy court in this case. *Chambers*, 283 B.R. at 916.

Neither party disputes that a contract existed or that a transfer of services took place. The point of contention between the parties appears to center on the requirement of an agreement reached prior to or contemporaneous with the transfer. Manning argues that, looking to what she refers to as the substance and not the form of the transaction, the objective intention of the parties was to create a loan. Manning argues that UIC transferred its services (i.e., educational resources) in exchange for the contemporaneous agreement of the student to pay for those services at a later date, i.e., after the start of classes when the tuition bill is sent. Manning argues that such giving such resources "on account" is nothing more than a loan in substance and should be treated as such.

In response, Chambers argues the transaction that took place was not a loan, but a mere failure to pay tuition when it became due. Chambers relies on cases such as *Renshaw* which require some sort of intent to make a loan, evidenced by a promissory note or other prior agreement. Absent such evidence of intent at or before the credit is extended, Chambers argues that such "on account" debts should not be considered loans.

Contrary to Manning's suggestion otherwise, the court finds persuasive the analysis of the Second Circuit in *Renshaw* and the Third Circuit in *Mehta*. In *Renshaw*, the court identified two situations in which the nonpayment of tuition could qualify as an educational loan under § 523(a)(8). The first was in situations where "funds have changed hands." *Renshaw*, 222 F.3d at 90, citing *In re Joyner*, 171 B.R. 762, 763 (Bankr. E.D. Pa. 1994) (college extended student a loan so that the student could pay for campus housing and a meal plan). The second such

5

situation was where "an agreement between the college and the student whereby the college extends credit to the student, permitting him to attend classes without paying tuition, in return for his agreement to pay tuition at a future date." *Renshaw*, 222 F.3d at 90. The court stated that evidence of such an agreement may take the form of a promissory note, *see id.*, but as the court in *Mehta* noted, "neither a formal promissory note, nor written agreement, is a prerequisite to proving a 'loan' so long as the circumstances allow the educational institution to satisfy its burden of proof." *Mehta*, 310 F.3d at 314. The flaw that both courts uncovered, based on nearly identical facts, was that no such evidence of an intention for a loan was present under these factual circumstances. Instead, the students had simply "unilaterally decided not to pay tuition when it became due." *Renshaw*, 222 F.3d at 88; *Mehta*, 310 F.3d at 314.

As the court further stated in *Renshaw*,

> The student's obligation therefore is simply to pay tuition on the due date, not to repay a loan. Renshaw's default on his tuition obligation created a debt. However, this debt did not arise out of a contract whereby Cazenovia College transferred money, goods, or services to Renshaw in return for his agreement to pay for them at some later date. Rather the debt arose out of Renshaw's failure to pay tuition on the due date, contrary to his agreement with Cazenovia College. Without an agreement by the lender to make a transfer in return for a future payment, we cannot find a loan. Renshaw's default may not be construed after the fact to find a loan.

*Renshaw*, 222 F.3d at 89.

This analysis in *Renshaw* is applicable here. No evidence is presented in the record of any agreement between Chambers and Manning to enter into a loan arrangement prior to the transfer of services. By attending classes and failing to pay, Chambers merely failed to pay her tuition obligations when they became due. That is a debt or an extension of credit but not a loan.

6

Rather, a loan requires an agreement whereby one party transfers money or its equivalent to the borrower or the borrower's designee and the borrower agrees to repay that amount.

Manning argues that *Renshaw* was wrongly decided because it never really examined the objective manifestations of the parties. Manning, however, never fully explains what such objective manifestations are. Presumably, Manning means that by attending classes Manning agreed to pay for the classes which she knew in advance would obligate her to a certain amount. Although this is true, it does not create a loan, it creates merely an obligation to pay, which is a debt. Manning sees this result as "convoluted thinking" because, by analogy, a homeowner's mortgage is "every bit a loan and the homeowner is certainly in debt even though the homeowner may never default on any payment thereof." This analogy, however, is poorly chosen in that a mortgage loan entails a payment of money to a seller in exchange for a security interest in the property purchased *and a promissory note* which creates a specific obligation in the buyer to repay to the lender by a date certain the amount of money the lender paid to the seller. By contrast, an "on account" debt merely expresses the requirement to pay for money, goods and services received when payment become due. Although both types of transactions have similarities, the distinction is not convoluted but well established.

As the bankruptcy court found, there is no evidence in the record of intent by either party to enter into a loan arrangement at any time. UIC did not extend an exact amount of credit in return for a promise by the debtor to pay that amount in the future. Instead, all that took place was a debt arose out of the debtor's failure to pay tuition and expenses on the billing due date.

Finally, due to the substantial amount of coverage both parties devote to the discussion of legislative intent, the court feels compelled to make a few remarks. Chambers maintains that the

7

use of the word "loan" is deliberate and had Congress meant "on account" extensions of credit to be considered loans, it would have amended the language to include such. Manning responds that Congress would not have amended the term "loan" if it had not thought on account debt was encompassed by the term "loan," in that Congress has steadily expanded the reach of § 523(a)(8), making it broader and more inclusive. The court finds persuasive the outlook taken by the bankruptcy court, which concluded that if Congress had intended any extension of credit to qualify for the exception to discharge in § 523(a)(8), it would have used the phrase "extension of credit" as used in § 523(a)(2). *See* 11 U.S.C. § 523(a)(2) ("A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . ."). Mindful that the burden of proof is on Manning to establish that UIC made a loan under § 523(a)(8), the court concludes that the bankruptcy court's grant of summary judgment was correct.[1]

## CONCLUSION

For the reasons stated above, the judgment of the bankruptcy court is affirmed.

ENTER: *Joan H. Lefkow*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: February 24, 2003

---

[1] In the alterative, Manning argues that the loan is dischargeable as an "educational benefit" under § 523(a)(8), relying on *Najafi* v. *Cabrini Coll.*, 154 B.R. 185 (Bankr. E.D. Pa. 1993). Manning first raises this argument, however, in her reply brief. It is, therefore, waived. *See, e.g., Fenster* v. *Tepfer & Spitz, Ltd.*, 301 F.3d 851, 859 (7th Cir.2002) ("An argument introduced for the first time in a reply brief is waived.").

8